UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

09 - md - 2085

IN RE: AIR CRASH NEAR CLARENCE CENTER,
NEW YORK ON February 12, 2009

**SECOND AMENDED
COMPLAINT**
This document relates to:
**09 cv 00440 (WMS) (Perry)**

_____

### SECOND AMENDED COMPLAINT

Plaintiff, ROBERT R. PERRY, Administrator of the Estate of JOHNATHAN R. PERRY,

Deceased, through his attorneys CLIFFORD LAW OFFICES, P.C. and GIBSON, MCASKILL &

CROSBY, LLP, complaining of Defendants, COLGAN AIR, INC.; PINNACLE AIRLINES, CORP.;

CONTINENTAL AIRLINES, INC.; BOMBARDIER AEROSPACE CORPORATION; and

BOMBARDIER, INC., a foreign corporation for profit, states as follows:

### PARTIES

1.      Plaintiff, ROBERT R. PERRY, is a resident and citizen of the State of Ohio and the

natural father of JOHNATHAN R. PERRY, now deceased.

2.      JOHNATHAN R. PERRY, was at the time of his demise, a resident and citizen of

the State of New York.

3.      At the time of his death, JOHNATHAN R. PERRY left surviving him, his father,

Robert R. Perry, his mother, Denise Perry, his adult sisters, Erin Perry and Alicia Perry, and his adult

brother, Adam P. Perry, as heirs at law.

4.      Plaintiff, ROBERT R. PERRY, is the Administrator of the Estate of JOHNATHAN

R. PERRY, having been duly appointed to act in such capacity by the Surrogate Court, New York

County, State of New York, on April 3, 2009.   He brings this action as Administrator and Personal

Representative of the Estate of JOHNATHAN R. PERRY, deceased, and on behalf of each and every

beneficiary, survivor, and heir of JOHNATHAN R. PERRY, deceased, upon applicable law.

5.      Defendant, COLGAN AIR, INC. (hereinafter "COLGAN"), is a corporation organized under the laws of the State of Virginia, with its principal place of business in Manassas, Virginia.  COLGAN is registered to conduct and conducts substantial business in the State of New York, including this Judicial District.  The agent for service of process is CT Corporation System, 111 Eighth Ave., New York, New York 10011.

6.      Defendant, PINNACLE AIRLINES CORP. (hereinafter "PINNACLE"), is a corporation organized under the laws of the State of Delaware, with its principal place of business in Memphis, Tennessee.  PINNACLE conducts substantial business in New York, including this Judicial District.  The agent for service of process is CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

7.      Defendant, CONTINENTAL AIRLINES, INC. (hereinafter "CONTINENTAL"), is a corporation organized under the laws of the State of Delaware, with its principal place of business in Houston, Texas.  CONTINENTAL is registered to conduct and conducts substantial business in the State of New York.  The agent for service of process is CT Corporation System, 111 Eighth Ave., New York, New York 10011.

8.      Defendant, BOMBARDIER AEROSPACE CORP. (hereinafter "BOMBARDIER") is a corporation duly organized under the laws of the State of Texas, and maintains its principal place of business in Quebec, Canada.  Bombardier conducts substantial business in the State of New York, including this Judicial District.  The agent for service of process is CT Corporation Systems, 350 N. St. Paul Street, Dallas, Texas 75201.

9.      Defendant, BOMBARDIER, INC., is a corporation organized under the laws of

2

Canada with its principal offices located in Montreal, Quebec, Canada and engaged in the design and manufacture of civil regional aircraft, including the Dash 8-Q400. At all times alleged herein, Bombardier, Inc. intentionally and purposely transacted and conducted business in the State of New York, including this Judicial District.

## JURISDICTION AND VENUE

10.     This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). The matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs and is between citizens of different States.

11.     On information and belief, this Court also has subject matter juridsiction over this action pursuant to 28 U.S.C. Section 1331, in that on information and belief, this action arises out of a treaty of the United States, namely, the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Montreal, Canada on May 28, 1999 ("Montreal Convention") or one of its predecessor conventions.

12.     Venue is proper based on 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District. All defendants are doing business in this district.

## ALLEGATIONS OF FACT

13.     At all times relevant hereto, Defendants, COLGAN, PINNACLE and CONTINENTAL, were common carriers for hire.

14.     On and before February 12, 2009, Defendants, COLGAN, PINNACLE and/or CONTINENTAL owned, managed, maintained, scheduled, managed, supervised and/or operated a Bombardier Dash 8-Q400 twin-engine turboprop airplane bearing a registration number of

N200WQ.  (Hereinafter referred to as "aircraft").

15.     On February 12, 2009, the above-referenced aircraft was listed as Continental Connection Flight 3407 and was scheduled to fly from Newark Liberty International Airport, in Newark, New Jersey to Buffalo Niagara International Airport, in Buffalo, New York.

16.     Flight 3407 was marketed as Continental Flight 3407 under the Continental brand, and Defendant, COLGAN, operated said aircraft under the name "Continental Connection."

17.     At all times relevant hereto, Defendant, COLGAN, operated under the name "Continental Connection" under a contractual agreement with Defendant, CONTINENTAL.

18.     Upon information and belief, at all times relevant hereto, Defendants, PINNACLE and COLGAN, had a parent/subsidiary and/or principal/agent and/or alter ego relationship. Defendant, PINNACLE is the parent, principal or alter ego of COLGAN.  PINNACLE utilizes COLGAN to conduct business in certain areas of the United States, including the State of New York. As a result of this relationship, both PINNACLE and COLGAN, are liable to Plaintiff for the crash of Flight 3407 and the resulting injury to and death of the Plaintiff's decedent, JOHNATHAN R. PERRY.

19.     Upon information and belief, the aircraft was purchased by Defendant, PINNACLE from Defendants, BOMBARDIER and/or BOMBARDIER, INC., in April, 2008 and was thereafter transferred to Defendant, COLGAN.

20.      Upon information and belief, on February 12, 2009, Marvin Renslow (hereinafter "RENSLOW"), was a resident of the State of Florida and was the Captain of Flight 3407.

21.     Upon information and belief, on February 12, 2009, Rebecca Shaw (hereinafter "SHAW"), was a resident of the state of Washington and was the First Officer of Flight 3407.

22.     Upon information and belief, at all times relevant hereto, RENSLOW and SHAW (collectively referred to as "flight crew"), were employees and/or agents of Defendants, COLGAN, PINNACLE and/or CONTINENTAL and were acting within the scope of their employment and/or agency.

23.     On February 12, 2009, Plaintiff's decedent, JOHNATHAN R. PERRY, was a fare-paying passenger on board Flight 3407.

24.     On information and belief, the contract of carriage for which Plaintiff's Decedent, JOHNATHAN R. PERRY was flying listed his origin and ultimate destination as Amsterdam, Netherlands with intermediate stopping points in Newark, New Jersey and Buffalo, New York.

25.     On February 12, 2009, Flight 3407 was on instrument approach descending for landing, approximately 6 miles from the Buffalo Niagara Airport, when the flight crew lost control of the aircraft.

26.     After the flight crew lost control of Flight 3407, and in the period of time leading to the crash, the aircraft flew out of control, violently moved in unexpected directions, rolled, dived, partially inverted, and ultimately crashed into a house on Long Road in Clarence Center, New York. These sudden, violent, and unexpected movements resulted in the passengers on board the aircraft, including the Plaintiff's decedent, JOHNATHAN R. PERRY, being subjected to unusual g-forces and sustaining physical bodily injuries, pain and suffering, pre-impact terror, mental anguish, emotional distress and other damages.

27.     On and prior to February 12, 2009, upon information and belief, Defendants, COLGAN, PINNACLE and CONTINENTAL, owned, controlled, inspected, serviced, maintained, repaired, scheduled, trained pilots and flight crew, monitored, loaded and operated the Flight 3407

aircraft and its component parts, including but not limited to the de-icing systems, flight control systems, electrical systems, and flight instrumentation, and, with Defendant, BOMBARDIER and/or BOMBARDIER, INC., wrote and/or approved instructions and warnings for the aircraft and its component parts and systems.

28.     Defendants, BOMBARDIER and/or BOMBARDIER, INC., designed, manufactured, assembled, inspected, tested, distributed, serviced, maintained, monitored, repaired, marketed and/or introduced into the stream of commerce the aircraft registered as N200WQ, and its component parts, including but not limited to, the aircraft's de-icing system, flight control systems, stabilizer system, electrical system, and flight instrumentation system, along with instructions, warnings and flight operations and maintenance manuals, for the aircraft and its component parts, which it approved, wrote, prepared, provided, monitored and sold, delivered and provided to Defendants, COLGAN, PINNACLE, and CONTINENTAL, and thereafter, each of those defendants monitored the aircraft for maintenance, mechanical reliability and airworthiness and undertook to, and did, service and maintain the aircraft to provide for its airworthiness.

29.     The Defendants, and their parents, subsidiaries, affiliates, associates and partners, at all relevant times, were the agent, servant, employee, assignee, successor in interest, or a joint venturer of each other, and were acting within the time, purpose, or scope of such agency or employment, and all acts or omissions alleged herein of each defendant were authorized, adopted, approved, or ratified by each of the other Defendants.

30.     At all times relevant hereto, Defendants were fully informed of the actions of their agents and/or employees, and thereafter, no officer, director or managing agent of Defendants repudiated those actions, which failure to repudiate constituted ratification, adoption and approval

of each of those actions.

31.     The Defendants actions described in this Complaint were wanton and reckless and demonstrated a conscious indifference and utter disregard of their effects upon the health and safety of others, including the Plaintiff's decedent, JOHNATHAN R. PERRY.

32.     As a direct and proximate result of the conduct of the Defendants, JOHNATHAN R. PERRY sustained injuries which resulted in his death, and his beneficiaries, heirs and survivors have incurred funeral, burial, travel and related expenditures.

33.     As a direct and proximate result of the conduct of the Defendants, JOHNATHAN R. PERRY died, and his beneficiaries, including without limitation, his father, Robert R. Perry, his mother, Denise, his adult sisters Erin Perry and Alicia Perry, and his adult brother, Adam Perry, have been damaged and will continue to be deprived of his future services, companionship, guidance, increased inheritance and support, and have sustained and will continue to sustain other economic and pecuniary losses, as well as other compensable damages under applicable law.

34.     Plaintiff's Decedent, JOHNATHAN R. PERRY, in no way contributed to or caused the crash of Flight 3407, or his injuries or death.

## COUNT I

## NEGLIGENCE – DEFENDANTS COLGAN, PINNACLE and CONTINENTAL

35.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 34 as if fully set forth herein.

36.     On and before February 12, 2009, Defendants, COLGAN, PINNACLE and CONTINENTAL, by and through its employees, agents and servants, as a common carrier for hire, had the duty to exercise the highest degree of care and to provide safe transport to all passengers on

board Flight 3407.

37.     On and before February 12, 2009, notwithstanding these duties, Defendants, COLGAN, PINNACLE and CONTINENTAL, by and through their employees and/or agents, including but not limited to RENSLOW and SHAW, breached their highest duty of care in one or more of the following respects:

a.      Failed to maintain proper, safe and/or adequate control over the Bombardier Dash 8-Q400  twin-engine turboprop airplane bearing a registration number of N200WQ;

b.      Failed to properly use all available de-icing and/or anti-icing equipment;

c.      Failed to properly monitor ice accumulation during flight;

d.      Failed to take proper action to avoid and exit atmospheric icing conditions;

e.      Allowed an unsafe ice accumulation to develop on the upper wings of Flight 3407;

f.      Operated Flight 3407 in atmospheric icing conditions for an unsafe length of time;

g.      Failed to maintain proper situational awareness of weather, flight and operating conditions;

h.      Failed to properly train its pilots and first officers in appropriate conduct during flight and in Cockpit Resource Management;

i.      Failed to maintain a sterile cockpit;

j.      Failed to properly train its flight crews in appropriately maintaining situational awareness;

k.      Failed to properly train its flight crews in low-airspeed awareness;

l.      Negligently hired, supervised, retained and/or trained the flight crew of Flight 3407;

m.      Failed to adequately detect and/or assess ice accretion on the aircraft;

n.      Failed to execute a timely recovery from an unusual attitude;

o.      During the conduct of the flight, did not provide the pilot in command with

additional available information of meteorological conditions that could adversely affect the safety of the flight;

p.     Dispatched and allowed Flight 3407 to operate when atmospheric icing conditions that might adversely affect the safety of the flight were predictable and/or expected and failed to and/or inadequately trained the flight crew to safely fly the aircraft in such conditions;

q.     Dispatched the aircraft into known areas of atmospheric icing conditions;

r.     Failed to provide and/or failed to ensure that the flight crew of Flight 3407 was provided with proper and/or adequate training as to the proper control, management and response techniques to foreseeable adverse weather and/or atmospheric icing conditions;

s.     Failed to properly train and/or failed to ensure that the flight crew of Flight 3407 was properly trained regarding roll anomalies;

t.     Continued operation into known atmospheric icing conditions engaged when it should have known that the Bombardier Dash 8-Q400 aircraft was unsuited for flight in such atmospheric icing conditions under said circumstances and that to do so unduly exposed the aircraft and its occupants to an unnecessary risk of harm; and/or

u.     were otherwise careless and/or negligent.

38.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions of Defendants, COLGAN, PINNACLE and/or CONTINENTAL and of Defendants, COLGAN, PINNACLE and/or CONTINENTAL's breach of their highest duty of care, Plaintiff's decedent, JOHNATHAN R. PERRY, sustained injuries which resulted in his death on February 12, 2009.

39.     As a direct and proximate result of Defendants, COLGAN, PINNACLE and/or CONTINENTAL's breach of their duties, Flight 3407 crashed, killing JOHNATHAN R. PERRY and proximately resulted in damages to Plaintiff, to the Estate and to JOHNATHAN R. PERRY's beneficiaries, mother, father, sisters and brother and all other beneficiaries, survivors and heirs under

applicable law, as well as causing pre-impact terror, pain, suffering, injuries and death to JOHNATHAN R. PERRY.  As a result, the distributees and loving survivors of JOHNATHAN R. PERRY, have suffered pecuniary loss, have incurred funeral expenses and have suffered a loss of the pecuniary benefits that they had a reasonable right to expect had JOHNATHAN R. PERRY lived, including but not limited to loss of support, guidance, and assistance, as well as possible inheritance.

## COUNT II

## RES IPSA LOQUITUR – DEFENDANTS COLGAN, PINNACLE and CONTINENTAL

40.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 39 as if fully set forth herein.

41.     The Plaintiff pleads the doctrine of *"Res Ipsa Loquitur"*.  This occurrence speaks for itself; that is: (a) an event such as the crash of Flight 3407 would not usually occur absent negligence; (b) the instrumentality (the Bombardier Dash 8-Q400 aircraft bearing registration number N200WQ) operating as Flight 3407 on February 12, 2009, was within the Defendants, COLGAN, PINNACLE and CONTINENTAL's, exclusive control; and (3) the Plaintiff's decedent, JOHNATHAN R. PERRY, did not contribute to the cause of the crash of Flight 3407.

42.     As a direct and proximate result of the negligence of the Defendants, COLGAN, PINNACLE and CONTINENTAL, Flight 3407 crashed, killing JOHNATHAN R. PERRY and proximately resulted in damages to Plaintiff, to the Estate and to JOHNATHAN R. PERRY's beneficiaries, mother, father, sisters and brother and all other beneficiaries, survivors and heirs under applicable law, as well as causing pre-impact terror, pain, suffering, injuries and death to JOHNATHAN R. PERRY.  As a result, the distributees and loving survivors of JOHNATHAN R. PERRY, have suffered pecuniary loss, have incurred funeral expenses and have suffered a loss of

10

the pecuniary benefits that they had a reasonable right to expect had JOHNATHAN R. PERRY lived,

including but not limited to loss of support, guidance, and assistance, as well as possible inheritance.

## COUNT III

## STRICT LIABILITY – DEFENDANTS BOMBARDIER and BOMBARDIER, INC.

43.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 42 as if fully
set forth herein.

44.     At all times relevant hereto, the aircraft designated as Flight 3407 was being used for
its intended and/or reasonably foreseeable purpose.

45.     The Bombardier Dash 8-Q400 twin-engine turboprop airplane bearing a registration
number of N200WQ and designated as Flight 3407 and its component parts, systems, manuals,
instructions and warnings were defective and unreasonably dangerous by reason of defective design,
manufacture, and/or marketing and the failure of Defendant, BOMBARDIER and/or
BOMBARDIER, INC., to give adequate and proper warnings of the dangers existing, and adequate
instructions regarding the avoidance of such dangers.

46.     The defective and dangerous condition of the aircraft exposed the Plaintiff's decedent,
JOHNATHAN R. PERRY, and others similarly situated on Flight 3407 and the general public to
unreasonable risk of harm and were a proximate and producing cause of the Plaintiff's injuries and
damages.

47.     The unreasonably dangerous conditions/defects include, among other things, the de-
icing system, the pilot's operation manual, the flight control systems, maintenance manuals and
procedures, and the absence of adequate warnings and instructions regarding the dangers.

48.     At the time the aircraft and its de-icing system, maintenance procedures and other

11

component parts were sold and/or marketed and/or placed into the stream of commerce by Defendants, BOMBARDIER and/or BOMBARDIER, INC., such products were defective and unreasonably dangerous to persons, including the Plaintiff's decedent, JOHNATHAN R. PERRY, who could reasonably be expected to use or benefit from them, and which defective and unreasonably dangerous condition were a direct and proximate cause to the Plaintiff's damages.

49.     The aircraft was also defective by reason of Defendants, BOMBARDIER and/or BOMBARDIER, INC's, failure to include or place within it adequate or proper warnings and/or instructions as to dangers associated with the design and foreseeable maintenance and use of the aircraft and products and how to avoid such dangers, and which defects rendered the aircraft and product dangerous and a direct and proximate cause of Plaintiff's injuries and damages.

50.     The aircraft, and its operating procedures, and maintenance manuals, and warnings issued by Defendants, BOMBARDIER and/or BOMBARDIER, INC., were defective in that they were so likely to be harmful that a reasonable person who had actual knowledge of their potential for producing injury or death would conclude that they should not have been marketed in that condition.

51.     The defective aircraft and products and inadequate warnings sold and/or marketed and provided by Defendants, BOMBARDIER and/or BOMBARDIER, INC., were a substantial factor in causing Plaintiff's damages, and JOHNATHAN R. PERRY's injuries and death. Accordingly, Defendants, BOMBARDIER and/or BOMBARDIER, INC., are strictly liable for Plaintiff's damages and for JOHNATHAN R. PERRY's injuries and death.

52.     As a direct and proximate result of Defendants, BOMBARDIER and/or BOMBARDIER, INC's, actions, Flight 3407 crashed, killing JOHNATHAN R. PERRY and

proximately resulted in damages to Plaintiff, to the Estate and to JOHNATHAN R. PERRY's beneficiaries, mother, father, sisters and brother and all other beneficiaries, survivors and heirs under applicable law, as well as causing pre-impact terror, pain, suffering, injuries and death to JOHNATHAN R. PERRY.  As a result, the distributees and loving survivors of JOHNATHAN R. PERRY, have suffered pecuniary loss, have incurred funeral expenses and have suffered a loss of the pecuniary benefits that they had a reasonable right to expect had JOHNATHAN R. PERRY lived, including but not limited to loss of support, guidance, and assistance, as well as possible inheritance.

## COUNT IV

## NEGLIGENCE – DEFENDANTS BOMBARDIER and BOMBARDIER, INC.

53.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants BOMBARDIER and/or BOMBARDIER, INC., negligently designed, manufactured, tested and marketed the aircraft and its component parts, systems, manuals, instructions and warnings.

55.     Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s, negligence was a proximate cause of the loss of control and crash of Flight 3407.

56.     Defendants, BOMBARDIER and/or BOMBARDIER, INC., knew, or in the exercise of reasonable, ordinary care should have known, that the aircraft and its component parts, systems, manuals, instructions and warnings were defective and unreasonably dangerous to those persons likely to use the aircraft and component parts for the purposes and in the manner for which they were intended to be used and for the purposes reasonably foreseeable to Defendants, BOMBARDIER and/or BOMBARDIER, INC., including the purpose for which the aircraft designated as Flight 3407

was being used on February 12, 2009.

57.    Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s, negligence was a direct and proximate cause of the crash of Flight 3407 and of the injuries and damages sustained as a result of the death of JOHNATHAN R. PERRY.

58.    Defendants, BOMBARDIER and/or BOMBARDIER, INC., knew or in the exercise of ordinary care should have known, how to design, manufacture, test and equip the aircraft, its manuals and its de-icing flight control systems, so that the type of incident and resulting injuries and death described in this Complaint would have been prevented.

59.    Defendants, BOMBARDIER and/or BOMBARDIER, INC., had actual knowledge of the means of designing, building and testing an aircraft, its manuals and flight control systems, such that they would not be inadequate or unreasonably dangerous.

60.    Defendants, BOMBARDIER and/or BOMBARDIER, INC., were negligent for the additional reason that it failed to give adequate or proper warnings or instructions to ordinary and foreseeable users of the aircraft designated as Flight 3407, including Defendants, COLGAN, PINNACLE and CONTINENTAL, as well as the Plaintiff's decedent, JOHNATHAN R. PERRY, and failed to recall or timely recall the products or make appropriate post-sale efforts, including but not limited to post-sale warnings and instructions, to prevent incidents such as the crash of Flight 3407.

61.    Defendants, BOMBARDIER and/or BOMBARDIER, INC., owed the Plaintiff's decedent, JOHNATHAN R. PERRY, a duty of reasonable care in the design, manufacture, testing, and marketing of the aircraft and component parts.

62.    Defendants, BOMBARDIER and/or BOMBARDIER, INC., violated their duties and

14

were negligent, including those acts of omission or commission previously described and/or in one

or more of the following ways:

    a.    Failing to design, manufacture and assemble its Model Dash 8-Q400 aircraft free of all defects;

    b.    Failing to design, manufacture and assemble its Model Dash 8-Q400 aircraft in such a way as to assure that it was safe and appropriate for its intended use;

    c.    Failing to properly and adequately test and monitor its Dash 8-Q400 aircraft so as to learn of its inherent inability to perform safely in atmospheric icing conditions;

    d.    Failing to design, manufacture and assemble its Model Dash 8-Q400 aircraft with a low-airspeed alert system;

    e.    Failing to design, manufacture and assemble its Model Dash 8-Q400 aircraft with an auto-throttle system in order to assure appropriate airspeed was maintained in icing conditions;

    f.    Failing to correct known structural (wing) icing problems;

    g.    Failing to provide adequate instructions and warnings to the flight crews of its Dash 8-Q400 aircraft, and the flying public, including Plaintiff's decedent, JOHNATHAN R. PERRY, of the potential hazards associated with the operation of the aircraft in atmospheric icing conditions, and how to avoid or preclude those hazards in the operation of the Dash 8-Q400 aircraft;

    h.    Recommended and marketed the sale of and sold Dash 8-Q400 aircraft when it knew or in the exercise of ordinary care, should have known that the aircraft did not have sufficient equipment to enable its crew to operate safely in atmospheric icing conditions;

    i.    Designed, manufactured, distributed and/or sold the aircraft with a wing structure that resulted in an unsafe accumulation of ice, and/or was sensitive to ice accretion; and/or

    j.    Was otherwise careless and/or negligent.

    63.    Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s, negligent acts, jointly

and/or severally, were a proximate cause of the crash, the injury to and death of JOHNATHAN R.

PERRY, and the injuries and damages sustained by the Plaintiff.

64.     The defective conditions and resulting crash of the aircraft designated as Flight 3407, were proximately caused by the negligent acts and omissions of Defendants, BOMBARDIER and/or BOMBARDIER, INC., in the design, manufacture, assembly, construction, testing, instruction, warning, certification, marketing, monitoring and sale of the aircraft, and by its failure to warn and to take appropriate remedial action before and after sale with respect to a known dangerously defective condition.

65.     As a direct and proximate result of Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s negligent actions, Flight 3407 crashed, killing JOHNATHAN R. PERRY and proximately resulted in damages to Plaintiff, to the Estate and to JOHNATHAN R. PERRY's beneficiaries, mother, father, sisters and brother and all other beneficiaries, survivors and heirs under applicable law, as well as causing pre-impact terror, pain, suffering, injuries and death to JOHNATHAN R. PERRY.  As a result, the distributees and loving survivors of JOHNATHAN R. PERRY, have suffered pecuniary loss, have incurred funeral expenses and have suffered a loss of the pecuniary benefits that they had a reasonable right to expect had JOHNATHAN R. PERRY lived, including but not limited to loss of support, guidance, and assistance, as well as possible inheritance.

## COUNT V

## BREACH OF EXPRESS AND IMPLIED WARRANTY

## DEFENDANTS BOMBARDIER and BOMBARDIER, INC.

66.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 65 as if fully set forth herein.

67.     Defendants, BOMBARDIER and/or BOMBARDIER, INC. are aerospace

16

manufacturers that holds itself out to the public as having superior knowledge, skill and experience in the design, construction, assembly, manufacture, testing, and maintenance of aircraft and in the preparation of flight and maintenance  manuals, and inspection of transport category aircraft and their components.

68.     In its course of business, Defendants, BOMBARDIER and/or BOMBARDIER, INC., designed, constructed, assembled, manufactured, inspected, tested, published flight operations and maintenance manuals, and caused the Dash 8-Q400 model aircraft to be certified, including the aircraft designated as Flight 3407 on February 12, 2009, which Defendants, BOMBARDIER and/or BOMBARDIER, INC., expressly and impliedly warranted was fit for its intended purposes and use as a vehicle in commercial air transportation, being airworthy and free of unreasonably dangerous defects.

69.     Defendants, BOMBARDIER and/or BOMBARDIER, INC., marketed, sold, distributed and caused the aircraft designated as Flight 3407 on February 12, 2009, to be introduced into the stream of commerce by sale or lease to Defendants, PINNACLE, COLGAN and/or CONTINENTAL.

70.     Defendants, BOMBARDIER and/or BOMBARDIER, INC., expressly and impliedly warranted to the general public, and to JOHNATHAN R. PERRY, specifically, that the aircraft and products in question were fit for the purpose for which they were intended.

71.     As a fare-paying passenger, JOHNATHAN R. PERRY, deceased made use of the aircraft designated as Flight 3407 in an intended and foreseeable manner, and he relied upon the express and implied warranties.

72.     In direct contradiction to the warranties, the aircraft and products were not fit for their

17

intended and foreseeable uses, thereby rendering the aircraft and products in question unreasonably dangerous.

73.     Defendants, BOMBARDIER and/or BOMBARDIER, INC., breached the aforementioned express and implied warranties because of the aircraft's inadequate and defective components as alleged herein, and because of the improper marketing, which included Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s, failure to provide warning of the aircraft's inadequacies and defects and the failure to provide proper and adequate instruction in the safe operation and maintenance of the aircraft.

74.     Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s, breach of warranties and the defects referenced above rendered the aircraft unreasonably dangerous and was a proximate and producing cause of the crash of Flight 3407, and the resulting injuries and damages suffered by the Plaintiff and JOHNATHAN R. PERRY, prior to his death.

75.     Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s, conduct and omissions were, upon information and belief, knowing and intentional.

76.     The crash of Flight 3407 and JOHNATHAN R. PERRY's death was proximately caused and/or substantially contributed to by Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s, breach of express and implied warranties of the aircraft's fitness for use and Defendant, BOMBARDIER's, breach of its representations that the Dash 8-Q400 model aircraft, and in particular, the aircraft designated as Flight 3407, was free of unreasonably dangerous defects in design and/or manufacture.

77.     As a member of the traveling public, JOHNATHAN R. PERRY, relied to his detriment upon Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s, express and implied

representations of safety and fitness for the use to which the aircraft designated as Flight 3407 was put to on February 12, 2009.

78.     As a direct and proximate result of Defendants, BOMBARDIER and/or BOMBARDIER, INC.'s, breach of warranties, Flight 3407 crashed, killing JOHNATHAN R. PERRY and proximately resulted in damages to Plaintiff, to the Estate and to JOHNATHAN R. PERRY's beneficiaries, mother, father, sisters and brother and all other beneficiaries, survivors and heirs under applicable law, as well as causing pre-impact terror, pain, suffering, injuries and death to JOHNATHAN R. PERRY.  As a result, the distributees and loving survivors of JOHNATHAN R. PERRY, have suffered pecuniary loss, have incurred funeral expenses and have suffered a loss of the pecuniary benefits that they had a reasonable right to expect had JOHNATHAN R. PERRY lived, including but not limited to loss of support, guidance, and assistance, as well as possible inheritance.

## COUNT VI (IN THE ALTERNATIVE)

## MONTREAL CONVENTION

## COLGAN AIR, INC.; PINNACLE AILINES CORP; and

## CONTINENTAL AIRLINES, INC.

79.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 78 as if fully set forth herein.

80.     On and before February 12, 2009, Defendants, COLGAN, PINNACLE and CONTINENTAL, by and through their employees, operated as a common carrier for hire in the air transportation of passengers.

81.     Defendants, COLGAN, PINNACLE and/or CONTINENTAL were the owner and/or

operator of a Bombardier Dash 8-Q400 twin-engine turboprop airplane bearing a registration number of N200WQ.

82.     On February 12, 2009, the Plaintiffs' Decedent, JOHNATHAN R. PERRY, was a passenger on board the Continental Connection Aircraft being operated by Colgan Air, Inc. As Flight 3407.

83.     On information and belief, the contract of carriage for which the Plaintiff's Decedent, JOHNATHAN R. PERRY, was flying listed his origin and ultimate destination as Amsterdam, The Netherlands, with intermediate stopping points of Newark, New Jersey and Buffalo, New York.

84.     On February 12, 2009, Flight 3407 was on instrument approach descending for landing, approximately 6 miles from the Buffalo Niagara Airport, when the flight crew lost control of the aircraft.

85.     After the flight crew lost control of Flight 3407, and in the period of time leading to the crash, the aircraft flew out of control, violently moved in unexpected directions, rolled, dived, partially inverted, and ultimately crashed into a house on Long Road in Clarence Center, New York.

86.     Defendants, COLGAN, PINNACLE and/or CONTINENTAL through their servants and employees, beached and violated duties of care they owed under applicable law to their passengers, including Plaintiff's decedent, Johnathan R. Perry, in their operation of Continental Connection Flight 3407.   The specific conduct which constituted the breach and violation of duties included, among other things, the following:

    a.    Failed to maintain proper, safe and/or adequate control over the Bombardier Dash 8-Q400  twin-engine turboprop airplane bearing a registration number of N200WQ;

    b.    Failed to properly use all available de-icing and/or anti-icing equipment;

c.     Failed to properly monitor ice accumulation during flight;

d.     Failed to take proper action to avoid and exit atmospheric icing conditions;

e.     Allowed an unsafe ice accumulation to develop on the upper wings of Flight 3407;

f.     Operated Flight 3407 in atmospheric icing conditions for an unsafe length of time;

g.     Failed to maintain proper situational awareness of weather, flight and operating conditions;

h.     Failed to properly train its pilots and first officers in appropriate conduct during flight and in Cockpit Resource Management;

i.     Failed to maintain a sterile cockpit;

j.     Failed to properly train its flight crews in appropriately maintaining situational awareness;

k.     Failed to properly train its flight crews in low-airspeed awareness;

l.     Negligently hired, supervised, retained and/or trained the flight crew of Flight 3407;

m.     Failed to adequately detect and/or assess ice accreation on the aircraft;

n.     Failed to execute a timely recovery from an unusual attitude;

o.     During the conduct of the flight, did not provide the pilot in command with additional available information of meteorological conditions that could adversely affect the safety of the flight;

p.     Dispatched and allowed Flight 3407 to operate when atmospheric icing conditions that might adversely affect the safety of the flight were predictable and/or expected and failed to and/or inadequately trained the flight crew to safely fly the aircraft in such conditions;

q.     Dispatched the aircraft into known areas of atmospheric icing conditions;

r.     Failed to provide and/or failed to ensure that the flight crew of Flight 3407 was provided with proper and/or adequate training as to the proper control, management and response techniques to foreseeable adverse weather and/or atmospheric icing conditions;

s.      Failed to properly train and/or failed to ensure that the flight crew of Flight 3407 was properly trained regarding roll anomalies;

t.      Continued operation into known atmospheric icing conditions engaged when it should have known that the Bombardier Dash 8-Q400 aircraft was unsuited for flight in such atmospheric icing conditions under said circumstances and that to do so unduly exposed the aircraft and its occupants to an unnecessary risk of harm; and/or

u.      were otherwise careless and/or negligent.

87.     As a direct result and proximate cause of the negligence of and breach of duties by Defendants, COLGAN, PINNACLE and CONTINENTAL, through its agents, servants and employees, Continental Connection Flight 3407 crashed on approach to Buffalo, New York.

88.     As a result of the crash mentioned in numbered paragraph 87, above, Plaintiff's decedent, JOHNATHAN PERRY, was injured through no fault of his own.

89.     As a result of the injuries mentioned in paragraph 88, above, Plaintiff's decedent, JOHNATHAN PERRY, died.

90.     At all relevant times, including February 12, 2009, the United States and The Netherlands had signed, ratified and adopted as law a multilateral International Treaty which supplies rules governing international carriage by air, known as the Convention for Unification of Certain Rules for International Carriage by Air, done at Montreal, Canada on May 28, 1999 (the "Montreal Convention").

91.     On information and belief, at the time of his injury and death, Plaintiff's Decedent, JOHNATHAN R. PERRY, was engaged in international carriage as defined in article 1(2) of the Montreal Convention and the same is, on information and belief, therefore, applicable to this action pursuant to Articles 1, 17 and 33 and all other relevant Articles of the Montreal Convention.

92.     On information and belief, on February 12, 2009, Defendants, COLGAN,

PINNACLE and/or CONTINENTAL, was the carrier who on information and belief was providing international carriage to Plaintiff's Decedent, JOHNATHAN R. PERRY, under the terms of the Montreal Convention.

93.     The accident which caused the injury and death of JOHNATHAN R. PERRY, took place on board the aircraft being operated by Defendants, COLGAN, PINNACLE and/or CONTINENTAL, by and through its agents and/or employees.

94.     As a direct and proximate result of Defendants, COLGAN, PINNACLE and/or CONTINENTAL's breach of their duties, Flight 3407 crashed, killing JOHNATHAN R. PERRY and proximately resulted in damages to Plaintiff, to the Estate and to JOHNATHAN R. PERRY's beneficiaries, mother, father, sisters and brother and all other beneficiaries, survivors and heirs under applicable law, as well as causing pre-impact terror, pain, suffering, injuries and death to JOHNATHAN R. PERRY.  As a result, the distributees and loving survivors of JOHNATHAN R. PERRY, have suffered pecuniary loss, have incurred funeral expenses and have suffered a loss of the pecuniary benefits that they had a reasonable right to expect had JOHNATHAN R. PERRY lived, including but not limited to loss of support, guidance, and assistance, as well as possible inheritance and any other damages available under the Montreal Convention.

**WHEREFORE**, Plaintiff demands judgment, jointly and severally as follows:

1.      Compensatory damages for wrongful death for the pecuniary losses suffered and to be suffered by Robert R. Perry, Denise Perry, Erin Perry, Alicia Perry and Adam P. Perry and all other beneficiaries, survivors and heirs under applicable law, in an amount which greatly exceeds the jurisdictional amount of $75,000, exclusive of interest and costs.  (N.Y. E.P.T.L. §5-4.3);

2.      Compensatory damages for the injuries and losses sustained by Johnathan R. Perry before he died.  (N.Y. E.P.T.L. §11-3.3);

23

3.       Funeral expenses (N.Y. E.P.T.L. §5-4.3);

4.       Damages arising from the pre-impact physical pain and suffering, mental terror, and mental anguish of Johnathan R. Perry, deceased (N.Y.  E.P.T.L. §11-3.3);

5.       Punitive damages in an amount to be fixed by the jury;

6.       Interest from the date of the occurrence, February 12, 2009, upon the principal sum recovered by the Plaintiff.  (N.Y. E.P.T.L. §5-4.3);

7.       Any and all economic and non-economic and compensatory damages available under the Montreal Convention;

8.       Costs and disbursements;

9.       That all issues of fact in this matter be determined by a jury; and

10.      Any such other relief as the Court deems proper.


Dated: July 9, 2010

s/Michael S. Krzak
Robert A. Clifford
Kevin P. Durkin
Michael S. Krzak
Colin H. Dunn
*Attorneys for Plaintiff*
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle, Suite 3100
Chicago, Illinois 60602
(312)899-9090

s/Charles S. Desmond, II
Brian P. Crosby
Charles S. Desmond, II
Gibson, McAskill & Crosby, LLP
69 Delaware Avenue
Suite 900
Buffalo, NY 14202