**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────

IN RE: AIR CRASH NEAR CLARENCE CENTER,
NEW YORK, ON FEBRUARY 12, 2009

**09-md-2085**

**This Document Relates To:**
**ALL CASES**

─────────────────────────────────


**COLGAN AIR, INC. AND PINNACLE AIRLINES CORP.'S MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER**
**PURSUANT TO THE COURT'S NOVEMBER 6, 2009 ORDER AND**
**FEDERAL RULE OF CIVIL PROCEDURE 26(c)**

CONDON & FORSYTH LLP
David J. Harrington
Times Square Tower
7 Times Square, 18th Floor
New York, NY 10036
Tel.: (212) 894-6816
Fax: (212) 370-4453
dharrington@condonlaw.com

- and -

GOLDBERG SEGALLA LLP
Neil A. Goldberg
665 Main Street, Suite 400
Buffalo, NY 14203
Tel.: (716) 566-5475
Fax: (716) 566-5401
ngoldberg@goldbergsegalla.com

*Attorneys for Defendants Colgan Air, Inc.*
*and Pinnacle Airlines Corp.*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY OF THE ARGUMENT ...............................................................................1

STATEMENT OF FACTS ..............................................................................................4

I. Defendants' Concerns Regarding Confidentiality and
Plaintiffs' Use of the Press..................................................................................4

II. The Renslow Transition Email and Plaintiffs' Public Communications ...............5

III. Plaintiffs' Demand for Colgan to De-Designate Its Entire Document Production.................9

LEGAL STANDARD....................................................................................................11

ARGUMENT ...............................................................................................................11

I. The Subject Discovery Materials are "Non-Judicial Documents and
Carry No Right of Public Access........................................................................11

    A. Deposition Testimony, Including the Deposition Transcripts that
Plaintiffs Filed as Exhibits to their Motions, are Non-Judicial Documents ...............13

II. Good Cause Exists For a Rule 26(c) Protective Order Governing Colgan's
Discovery Materials...........................................................................................14

    A. The Release and Subsequent Mischaracterization of the Renslow Transition
Email Already Have Created a Media Firestorm and Tainted the Potential
Jury Pool ...............................................................................................14

    B. Plaintiffs Cannot Demonstrate a Legitimate Interest in Disclosing Colgan's
Discovery Materials to the Public.................................................................16

III. New York's Rules of Professional Conduct Support Colgan's Request
for a Rule 26(c) Protective Order.......................................................................18

CONCLUSION.............................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Dorsett v. County of Nassau,*
-- F. Supp. 2d --, 2011 WL 3438438 (E.D.N.Y. Aug. 8, 2011) ............................................... 11

*Dorsett v. County of Nassau,*
762 F. Supp. 2d 500 (E.D.N.Y. 2011) ........................................................................ 13, 14, 17

*In re Agent Orange Product Liab. Litig.,*
821 F. 2d 139 (2d. Cir. 1987) .................................................................................... 11, 12

*In re Parmalat Sec. Litig.,*
258 F.R.D. 236 (S.D.N.Y. 2009) ...................................................................................... 12

*In re September 11 Litigation,*
262 F.R.D. 274 (S.D.N.Y. 2009) ................................................................................ 16, 17

*Lugosch v. Pyramid Co. of Onondaga,*
435 F.3d 110 (2d Cir. 2006) ................................................................................ 11, 12, 13

*People v. Buttafuoco,*
599 N.Y.S.2d 419 (Sup. Ct. Nassau County 1993) ................................................................. 19

*S.E.C. v. TheStreet.com,*
273 F.3d 222 (2d Cir. 2001) .................................................................................... 11, 12

*Schiller v. City of New York,*
No. 04 Civ. 7922, 2007 WL 136149 (S.D.N.Y. Jan. 19, 2007) ........................................................ 14

*Seattle Times Co. v. Rhinehart,*
467 U.S. 20 (1984) .......................................................................................................... 11

*Standard Inv. Chartered v. Nat'l Ass'n of Secs. Dealers, Inc.,*
621 F. Supp. 2d 55 (S.D.N.Y. 2007) .................................................................................... 14

*Stern v. Crosby,*
529 F. Supp. 2d 417 (S.D.N.Y. 2007) ................................................................................ 17, 18

*The Diversified Group, Inc. v. Daugerdas,*
217 F.R.D. 152 (S.D.N.Y. 2003) ........................................................................................ 13

*United States v. Amodeo,*
44 F.3d 141 (2d Cir. 1995) .................................................................................. 11, 12, 13

*United States v. Amodeo*,
    71 F.3d 1044 (2d. Cir. 1995)............................................................................12, 13

**STATUTES, RULES AND TREATISES**

Fed. R. Civ. P. 5(d) ......................................................................................................12

Fed. R. Civ. P. 26(c) .............................................................................................. *passim*

Fed. R. Civ. P. 26(c)(1)................................................................................................11

N.Y. Rule of Professional Conduct § 3.6.....................................................................18

*Moore's Federal Practice*, § 26.105(7)(c) (rev. 3d ed. Supp. 2011)............................12

## PRELIMINARY STATEMENT

Defendants Colgan Air, Inc. ("Colgan") and Pinnacle Airlines Corp. (collectively "Colgan")[1] respectfully submit this memorandum of law, together with the accompanying Declaration of David J. Harrington dated November 17, 2011 and the exhibits thereto (the "Harrington Decl."), in support of their motion for a protective order pursuant to the Protective Order Regarding Confidential Information, 09-md-2085, Document 3, entered November 6, 2009 (the "November 6, 2009 Order") and Federal Rule of Civil Procedure 26(c) prohibiting the disclosure, dissemination, release or revelation of, and permanently designating as "Confidential Information," all deposition transcripts, discovery documents and materials produced by Colgan in *In re: Air Crash Near Clarence Center, New York, on February 12, 2009*, 09-md-2085 (WMS), the consolidated multidistrict litigation pending in this Court arising from the crash of Continental Connection Flight 3407, which was operated by Colgan (the "Flight 3407 Litigation").

## SUMMARY OF THE ARGUMENT

Due to the recent media coverage fueled by Plaintiffs' Liaison Counsel regarding a document that Colgan recently de-designated at Plaintiffs' request, as well as Plaintiffs' continual use of the media during the course of the litigation to date, it is now abundantly clear that the jury pool in the Western District of New York has been tainted and that Colgan will not be able to receive a fair trial before an impartial jury in this District. Since the inception of this litigation, Defendants have expressed concerns that Plaintiffs' media strategy will taint the jury

---

[1] Defendants Continental Airlines, Inc. ("Continental") and Flight Safety International support Colgan's position regarding the importance of maintaining Defendants' confidentiality designations. Defendants Bombardier, Inc. and Bombardier Aerospace Corporation (collectively "Bombardier") have advised they will file a separate joinder to this motion.

pool and will unfairly prejudice Defendants' ability to receive a fair trial. Even this Court has expressed concerns regarding using the media to try this case before the court of public opinion cautioning that "[n]one of [the parties' expectations and concerns] benefits from comments to the media." *See* July 8, 2010 Hr'g Trans. at 15:21-15:25 (attached as Ex. A to the Harrington Decl.). The Court further cautioned that "[M]y expectation is a simple one, that you all act ethically, professionally, and to the very best of your respective abilities with your clients to not unfairly impact or prejudice anything that might make these cases work out in the best interest of the greater good." *Id.* at 16:15-16:20.

The conduct of Plaintiffs' Liaison Counsel after Colgan voluntarily de-designated as "Confidential Information" an email string that Plaintiffs' Liaison Counsel has repeatedly and publicly termed a "smoking gun" certainly did not comport with the Court's expectations. His conduct also has now verified Defendants' concerns and is further proof that Plaintiffs' true motives are to poison the jury pool and to create a negative public opinion of Colgan for use as leverage in settlement negotiations.

The instant motion is necessitated by Plaintiffs' Liaison Counsel's recent demand that Colgan remove all confidentiality designations from its discovery documents. Plaintiffs cannot be allowed to continue to taint the jury pool and to continue their purposefully reckless and harmful media strategy. Plaintiffs' disappointing and completely unprofessional course of action after Colgan voluntarily de-designated an internal email regarding the transition of Captain Renslow from Saab 340 Captain to Q400 Captain (the "Renslow transition email") (attached as Ex. B to the Harrington Decl.) has forced Colgan to now move for a protective order permanently designating all of its discovery documents and deposition transcripts as "Confidential Information" in accordance with the November 6, 2009 Protective Order.

Less than twenty-four hours after Colgan voluntarily de-designated the Renslow transition email, Plaintiffs' Liaison Counsel began a media blitzkrieg, including full-blown television interviews with local and national news organizations, which were replete with inaccurate and misleading statements. The Renslow transition email itself was shown on various news reports. Further, in the course of giving these interviews, Plaintiffs' Liaison Counsel made unfounded accusations that the Renslow transition email was purposefully withheld from the National Transportation Safety Board ("NTSB") during the course of the NTSB's investigation of the Flight 3407 accident and that a Colgan employee gave untruthful testimony during a public hearing before the NTSB. Plaintiffs' Liaison Counsel certainly knew or should have known that such statements and public communications would have a substantial likelihood of tainting the jury pool and prejudging Colgan's ability to receive a fair trial. Accordingly, Colgan is justifiably suspect of Plaintiffs' motive in demanding that Colgan now de-designate its entire document production. Colgan also is very wary that doing so only will further assist Plaintiffs' efforts to try this case in the media and to so taint the jury pool that Defendants cannot secure a fair trial in this Court.

As set forth herein, the Court has strong legal grounds under governing Second Circuit law to issue a protective order prohibiting the disclosure, dissemination, release or revelation of Colgan's discovery materials in the Flight 3407 Litigation. These materials are not "judicial documents" to which the public has a presumptive right of access and the recent actions by Plaintiffs' Liaison Counsel constitute the requisite good cause to justify restricting their access to the public. Further, New York's Rules of Professional Conduct support Colgan's position because they prohibit extrajudicial statements that have a "substantial likelihood of materially prejudicing an adjudicative proceeding."

**STATEMENT OF FACTS**

**I.     Defendants' Concerns Regarding Confidentiality and Plaintiffs' Use of the Press**

Defendants' concerns over their discovery materials being discussed or reproduced in the press and consequently, their ability to obtain a fair trial in this Court, are long-standing.  In fact, Defendants voiced these concerns during the parties' unsuccessful attempt in 2009 to negotiate an agreed proposed confidentiality protective order to submit to the Court before discovery commenced.  *See, e.g.,* Defendants' Responses to Plaintiffs' Objections to Defendants' Proposed Protective Order Regarding Confidential Information dated September 8, 2009 at 3 ("Defendants' September 8, 2009 Responses") (attached as Ex. C to the Harrington Decl.).  In advocating for the need for a broad protective order, Defendants emphasized that they "want to avoid this case being tried in the media or the jury pool being tainted."    With respect to deposition transcripts and videotapes (one of several discovery categories over which the parties disputed the extent to which confidentiality should be maintained), Defendants pointed out that "Plaintiffs offer no plausible reason why they would need [them] to be made available to anyone other than the people that are specifically allowed to receive Confidential Information under the terms of the [proposed] Protective Order."  *Id.*

The Court subsequently issued its November 6, 2009 Order (attached as Ex. D to the Harrington Decl.), under which Defendants have designated certain discovery materials as "Confidential Information."  Under the terms of this Order, the receiving party must notify the designating party of any objection to a confidentiality designation "by delivering to the designating party a letter setting forth the basis for the objection and the specific documents to which the objection applies."  *See id.* at ¶ 2.  The parties are then to confer to try to resolve their differences and, if they are unable to do so, the designating party can file a motion for a

- 4 -

protective order regarding the documents at issue "proving that the document or information is entitled to protection under applicable law." *Id.*

The November 6, 2009 Order also explicitly provides that any confidentially designated materials "shall not be used for any purpose other than for the prosecution, defense, mediation, settlement, trial or appeal of the Consolidated/MDL cases and any pre-trial or post-trial proceeding or appeal." *See id.* at ¶ 1.7. In addition, the Order limits distribution of these materials to the Court, the parties and their counsel, experts and others involved with the Flight 3407 Litigation, and requires that these individuals complete a non-disclosure agreement before receiving any confidential materials. *See id.* at ¶¶ 4.1 and 4.2. The Order does not allow for disclosure of confidential materials to the press or general public. Similarly, the Court has cautioned that "all I want to do is reemphasize the importance of the confidentiality, the importance of the integrity of our process." *See* Harrington Decl. Ex. A, July 8, 2010 Hr'g Trans. at 16:11-16:13.

## II.    The Renslow Transition Email and Plaintiffs' Public Communications

On October 3, 2011, Plaintiffs' Liaison Counsel sent a letter to Colgan counsel objecting to Colgan's confidentiality designation of the Renslow transition email that Colgan disclosed during the course of discovery. *See* H. Russ letter to D. Harrington dated October 3, 2011 (attached as Ex. E to the Harrington Decl.). Colgan counsel responded by letter the next day, expressing concern about Plaintiffs' motive in requesting that the Renslow transition email be de-designated given Plaintiffs' counsel's "continual statements to the local Buffalo press." *See* D. Harrington letter to H. Russ dated October 4, 2011 (attached as Ex. F to the Harrington Decl.). Plaintiffs did not respond to this letter nor did they address Colgan's concern about Plaintiffs' counsel's statements to the press. Nevertheless, Colgan agreed to withdraw its

confidentiality designation from the Renslow transition email on October 20. *See* D. Harrington email to H. Russ dated October 20, 2011 (attached as Ex. G to the Harrington Decl.).

Less than twenty-four hours later, the *Buffalo News* published an article regarding the Renslow transition email with inaccurate and disparaging quotations from Plaintiffs' Liaison Counsel. *See* Phil Fairbanks, *Emails reveal bosses' doubts about Renslow*, BUFFALO NEWS, October 21, 2011 (attached as Ex. H to the Harrington Decl.). That same day, Buffalo's local NBC affiliate, WGRZ-TV, ran a televised feature that opened with video of Plaintiffs' Liaison Counsel stating: "This set of emails really is a smoking gun," followed by images of the actual Renslow transition email. *See New Colgan Emails*, WRGZ-TV, October 21, 2011 (attached as Ex. I to the Harrington Decl.).[2] Plaintiffs' Liaison Counsel gave similar interviews over the next few days to national news outlets. *See, e.g., Was pilot of doomed plane fit to fly?*, The NBC Today Show, October 23, 2011, (attached as Ex. J to the Harrington Decl.); *Pilot was not qualified to fly plane*, CNN, October 24, 2011 (attached as Ex. K to the Harrington Decl.).

During an interview with ABC News, Plaintiffs' Liaison Counsel misrepresented Captain Renslow's training and experience with the Bombardier Q400 aircraft (the aircraft operated for Flight 3407), stating that "[t]here is no proof that would confirm Colgan's position [that Captain Renslow received further training and experience on the Q400 before the crash of Flight 3407]." *See* James Hill, *'Smoking Gun' Emails Released in 2009 Buffalo Plane Crash*, ABC NEWS, October 21, 2011 (attached as Ex. L to the Harrington Decl.). Plaintiffs' Liaison Counsel went on to state that "I would simply call it wishful thinking." *Id.*

These statements are patently false. As Plaintiffs' Liaison Counsel undoubtedly is aware, Captain Renslow was properly certified and qualified to fly the Q400 aircraft; he received the

---

[2] All exhibits in the form of multimedia clips are contained on the DVD accompanying the Harrington Declaration.

proper flight training, including successfully completing Colgan's Q400 ground and simulator training program that was approved by the Federal Aviation Administration ("FAA"), and also passed his FAA-administered type rating check flight.  *See* NTSB Operations Group Chairman Factual Report, Section 2.1 at 6 (attached as Ex. M to the Harrington Decl.).  Accordingly, Colgan counsel immediately asked Plaintiffs' Liaison Counsel to retract his "misleading and factually inaccurate" statement.  *See* D. Harrington email to H. Russ dated October 22, 2011 (attached as Ex. N to the Harrington Decl.).  Plaintiffs' Liaison Counsel agreed that he "was not accurately quoted," but has yet to retract his statement.  *See* H. Russ email to D. Harrington dated October 22, 2011 (attached as Ex. O to the Harrington Decl.).

Additionally, in the course of giving the media interviews regarding the Renslow transition email, Plaintiffs' Liaison Counsel made unfounded accusations that Colgan's former Vice President of Flight Operations, Harry Mitchel, gave untruthful testimony during a May 13, 2009 public hearing before the NTSB.  *See Attorneys in court over Colgan emails*, WIVB, October 25, 2011 (attached as Ex. P to the Harrington Decl.).  Moreover, Plaintiffs' Liaison Counsel has not been Plaintiffs' only representative to speak publicly about the Renslow transition email.  At least one Plaintiff has been interviewed by both national and Buffalo news programs concerning the emails. *See Was pilot of doomed plane fit to fly?*, The NBC Today Show, October 23, 2011 (*see* Harrington Decl. Ex. J); *Was the Pilot of Flight 3407 Qualified?*, WKBW NEWS, October 21, 2011 (attached as Ex. Q to Harrington Decl.).  She also commented on the *Buffalo News'* website that "Renslow was deemed NOT qualified to fly the Q400 in a series of emails…Somehow he ended up in the cockpit, against direct orders, unqualified, killing

51 lives."  Jennifer West, comment, *Withheld Colgan emails prompt call for probe*, BUFFALO

NEWS, October 30, 2011 (attached as Ex. R to Harrington Decl.) (emphasis in original).[3]

The media firestorm over the Renslow transition email continues on both the local and

national level, including about whether Colgan improperly withheld information during the

NTSB's investigation into the crash of Flight 3407, an accusation that Colgan emphatically

disputes.[4]  *See, e.g.,* Carolyn Thompson and Joan Lowy, *Lawyer: Emails confirm NY crash pilot*

*shortcomings*, BUFFALO NEWS, October 21, 2011 (attached as Ex. U to Harrington Decl.);

WKBW News, *Was the Pilot of Flight 3407 Qualified?*, WKBW NEWS, October 21, 2011

(attached as Ex. V to Harrington Decl.); Associated Press, *Lawyer says emails confirm pilot's*

*shortcomings; part of lawsuit over NY crash into home*, WASHINGTON POST, October 21, 2011

(attached as Ex. W to Harrington Decl.); Ashley Hayes, *Attorneys: Airline concerned about*

*pilot's ability before 2009 crash*, CNN, October 23, 2011 (attached as Ex. X to Harrington

Decl.); Jerry Zremski, *Colgan Deception Issue Extends to 2009 Probe*, BUFFALO NEWS, October

25, 2011 (attached as Ex. Y to Harrington Decl.); Eli George, *Attorneys in court over Colgan*

*emails*, WIVB, October 25, 2011 (attached as Ex. Z to Harrington Decl.); Dave McKinley,

---

[3] In the same comment, Ms. West also wrote that "[y]ou can look [the emails] up on line and I
have them (don't know how to post them)."  To the extent Ms. West is in possession of any
Defendants' other discovery materials, she is bound by the terms of the November 6, 2009
Order from either disclosing or discussing them publicly.

[4] On November 9, 2011, the NTSB requested that Colgan provide "[a]ny and all information
that was not previously provided to the NTSB regarding the training for, and technical
qualifications of Captain Marvin Renslow and First Officer Rebecca Shaw."  D. Hersman
letter to B. Hunt dated November 9, 2011 (attached as Exhibit S to the Harrington Decl.).
However, the NTSB noted that "the content of the [Renslow transition email] appears to be
consistent with information investigators learned through extensive interviews and review of
other materials during the course of our investigation."  *Id.*  The NTSB also noted that "[t]he
previously undisclosed [Renslow transition email] do[es] not appear to give reason for
reconsideration of the NTSB's final report and probable cause determination."  NTSB Press
Release, *Statement From NTSB Chairman Deborah A.P. Hersman on Letter to Pinnacle*
*Airlines Corp.*, November 10, 2011 (attached as Exhibit T to the Harrington Decl.).

*Schumer Calls for Senate Hearings into Colgan Air E-Mails*, WGRZ, October 25, 2011 (attached as Ex. AA to Harrington Decl.); News Editorial Board, *Colgan Needs to Come Clean*, BUFFALO NEWS, October 26, 2011 (attached as Ex. BB to Harrington Decl.); WNED News, *Colgan Emails Raise Questions about NTSB Investigation*, WNED NEWS, October 25, 2011 (attached as Ex. CC to Harrington Decl.); Jerry Zremski, *Withheld Colgan emails prompt call for probe*, BUFFALO NEWS, October 30, 2011 (*see* Harrington Decl. Ex. R); Jerry Zremski, *Renslow's promotion defended by airline*, BUFFALO NEWS, November 2, 2011 (attached as Ex. DD to Harrington Decl.); and Jerry Zremski, *Safety board aims to assist probe of Colgan emails on Flight 3407 pilot*, BUFFALO NEWS, November 4, 2011 (attached as Ex. EE to Harrington Decl.).

## III.  Plaintiffs' Demand for Colgan to De-Designate Its Entire Document Production

On October 17, 2011, just three days before Colgan agreed to de-designate the Renslow transition email and four days before the ensuing media barrage began, Plaintiffs' Liaison Counsel sent Colgan counsel a letter "demand[ing] that Colgan remove the 'confidential' designation from all of the documents it has produced."  *See* H. Russ letter to D. Harrington dated October 17, 2011 ("Russ October 17, 2011 letter") (attached as Ex. FF to the Harrington Decl.).[5]  Colgan counsel responded by letter on October 28 and requested that, as required under

---

[5]  Plaintiffs argue that Colgan improperly designated discovery materials as "Confidential Information" as that term is defined in the November 6, 2009 Order.  *See* Harrington Decl. Ex. FF, Russ October 17, 2011 letter.  Notwithstanding this objection, given the recent actions by Plaintiffs' Liaison Counsel following Colgan's de-designation of the Renslow transition email, Colgan has no choice but to move for a protective order pursuant to Federal Rule of Civil Procedure 26(c) for its discovery materials in order to protect its own rights.  Since Plaintiffs have requested that <u>all</u> documents be de-designated as Confidential Information, it is impractical to address each document individually and whether each contains Confidential Information under the terms of the November 6, 2009 Order.  To the extent the Court would like the parties to brief whether Colgan's confidentiality designations of each and every one of its documents are proper under the terms of the November 6, 2009 Order, Colgan respectfully requests permission to do so.

the November 6, 2009 Order, Plaintiffs identify the specific documents they believe should not be designated as confidential so that Colgan can review its document production accordingly. *See* D. Harrington letter to H. Russ dated October 28, 2011 (attached as Ex. GG to the Harrington Decl.). Colgan counsel also reiterated their concerns regarding Plaintiffs' motive in "demanding" that Colgan de-designate its remaining document production in light of Plaintiffs' Liaison Counsel's countless inaccurate and misleading media statements and interviews concerning the Renslow transition email. *See id.* Plaintiffs have not responded on either issue.[6]

Plaintiffs' request that Colgan de-designate its entire document production, viewed in light of Plaintiffs' Liaison Counsel's recent media interviews and statements concerning the Renslow transition email, makes clear that Plaintiffs' only motive for this request is to use Colgan's discovery materials to further their efforts to try their case in the press and poison the jury pool by creating public outrage about Colgan. Indeed, Plaintiffs are unable to proffer a legitimate reason for their request that all Colgan's documents be de-designated as confidential. Nothing about the confidentiality designation prevents documents that are found to be admissible from being introduced as evidence at a public trial and, thus, there is absolutely no prejudice to Plaintiffs resulting from Colgan's confidential designations.

---

[6] Plaintiffs' Liaison Counsel did respond that he "provide[d] copies of the 'smoking gun' [Renslow transition email] to the press" but "only **after** the *Buffalo News* had them from another source — not from me." *See* H. Russ letter to D. Harrington dated November 1, 2011 (*see* Harrington Decl. Ex. HH) (emphasis in original). However, even if the *Buffalo News* obtained the Renslow transition email from another source, Plaintiffs needed it to be de-designated in order to speak to the press about it. Moreover, given that the November 6, 2009 Order restricted access to the Renslow transition email to specified individuals involved with the litigation, Plaintiffs have not explained who, besides Plaintiffs, had the incentive to provide it to the media.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) ("Rule 26(c)") provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). A court can issue a Rule 26(c) protective order to preclude parties from sharing discovery materials with non-parties. *See, e.g., Dorsett v. County of Nassau*, -- F. Supp. 2d --, 2011 WL 3438438, at *4 (E.D.N.Y. Aug. 8, 2011) ("*Dorsett II*") (recognizing the validity of a Rule 26(c) confidentiality order prohibiting disclosure of discovery materials to non-parties absent the consent of the parties or upon court order). Additionally, a party may seek a Rule 26(c) protective order at any time. *See id.*, 2011 WL 3438438, at *6. However, a party seeking a Rule 26(c) protective order must demonstrate "good cause." *See In re Agent Orange Product Liab. Litig.*, 821 F. 2d 139, 145 (2d. Cir. 1987). The "good cause" determination hinges on whether the documents and materials at issue are "judicial documents." *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

## ARGUMENT

### I. The Subject Discovery Materials are "Non-Judicial Documents" and Carry No Right of Public Access

Colgan's rights — most notably its rights to an unbiased jury and a fair trial — have been violated by the disclosure to the public of Colgan's documents to which the public has no presumptive right. Pursuant to governing Second Circuit law, the public has a presumptive right of access only to "judicial" documents. *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). "'Judicial documents'…are 'item[s] filed [with the court that are] relevant to the performance of the judicial function and useful in the judicial process.'" *S.E.C. v.*

*TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001) (quoting *Amodeo I*, 44 F.3d at 145).    On the

other hand, "[d]ocuments that play no role in the performance of Article III [judicial] functions,

such as those passed between the parties in discovery, lie entirely beyond the presumption's

reach." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d. Cir. 1995) ("*Amodeo II*").

The Second Circuit has repeatedly held that "[b]efore any such common law right [of

access] can attach…a court must first conclude that the documents at issue are indeed 'judicial

documents.'" *See, e.g., Lugosch*, 435 F.3d at 119.  However, the documents and materials that

are the subject of this motion are undoubtedly "non-judicial" documents to which the public has

no right of access.  They were produced by Colgan during discovery and serve no judicial

function.   In their letter "demanding" that Colgan de-designate its document production,

Plaintiffs argue that there is a public right of access to this discovery, but fail to distinguish

between judicial documents and non-judicial documents.  *See* Harrington Decl. Ex. FF, Russ

October 17, 2011 letter.  Specifically, Plaintiffs incorrectly rely on *In re Agent Orange*, which

cited the former Federal Rule of Civil Procedure 5(d), requiring that parties file discovery

documents with the court.  *See Moore's Federal Practice*, § 26.105(7)(c) (rev. 3d ed. Supp.

2011).  However, the Second Circuit has noted that "to the extent that *Agent Orange* relied on

Federal Rule of Civil Procedure 5(d) to find a statutory right of access to discovery materials, we

observe that the recent amendment to this rule provides no presumption of filing all discovery

materials, let alone public access to them."  *SEC v. TheStreet*, 273 F.3d 222, 233 n.11 (2d. Cir.

2001).  Plaintiffs' reliance on *In re Parmalat Sec. Litig.*, 258 F.R.D. 236 (S.D.N.Y. 2009), which

also involved judicial documents, is similarly inapposite.  Plaintiffs offer nothing to counter that

"the First Amendment applies only to judicial documents," which clearly are not at issue here.

*See Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 526 (E.D.N.Y. 2011) (citing *Lugosch*, 435 F.3d at 125), *aff'd*, -- F. Supp. 2d -- 2011 WL 3438438 (E.D.N.Y. Aug. 8, 2011) ("*Dorsett I*").

### A. Deposition Testimony, Including the Deposition Transcripts that Plaintiffs Filed as Exhibits to their Motions, are Non-Judicial Documents

Second Circuit case law makes clear that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document." *Amodeo I*, 44 F.3d at 145. Moreover, documents created in the course of discovery have the weakest presumption of public access. *The Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 159 (S.D.N.Y. 2003). Accordingly, parties cannot transform a document, such as a deposition transcript, from a non-judicial document to a judicial document simply by filing a copy of that document with the court. Otherwise, the distinction between "non-judicial" and "judicial" documents would be eviscerated — a party seeking to make an irrelevant document public, even one covered by a governing protective order, would need only to file it as an exhibit to a motion under the false premise that the document is integral to the court's Article III function.

The deposition transcripts produced in this case thus far — including those filed with the Court as part of Plaintiffs' Motion to Amend Case Management Order to Eliminate RFP Limitation on October 26, 2011 — are clearly non-judicial documents. Depositions, like documents produced by the parties in response to requests for production, are merely one form of discovery, all of which lie entirely beyond the reach of the presumption of public access to "judicial documents." *See Amodeo II*, 71 F.3d at 1050. As set forth below, good cause exists to keep confidential these transcripts as well as all other discovery produced by Colgan.

## II.	Good Cause Exists For a Rule 26(c) Protective Order Governing Colgan's Discovery Materials

Where, as here, the documents at issue are non-judicial, a movant seeking a Rule 26(c) protective order need only make a "'baseline showing of good cause in order to justify the imposition of a protective order.'"  *See Dorsett I*, 762 F. Supp. 2d at 517 ((quoting *Standard Inv. Chartered v. Nat'l Ass'n of Secs. Dealers, Inc.*, 621 F. Supp. 2d 55, 62 (S.D.N.Y. 2007)).  In order to do so, Colgan need only make a "minimal showing of possible harm from disclosure" unless Plaintiffs "can demonstrate a legitimate interest in preventing" a Rule 26(c) order.  *See Dorsett I*, 762 F. Supp. 2d at 519.  Colgan may "establish good cause for a protective order by demonstrating that public disclosure would be substantially likely to prejudice" the future trial.  *Schiller v. City of New York*, No. 04 Civ. 7922, 2007 WL 136149, at *6 (S.D.N.Y. Jan. 19, 2007).  Here, the recent actions by Plaintiffs' Liaison Counsel concerning the Renslow transition email have established the requisite good cause necessary for a Rule 26(c) protective order.  Moreover, Plaintiffs have no legitimate interest in the public disclosure of Colgan's discovery materials.

### A.	The Release and Subsequent Mischaracterization of the Renslow Transition Email Already Have Created a Media Firestorm and Tainted the Potential Jury Pool

Less than twenty four hours after Colgan agreed to de-designate the Renslow transition email, the local and national media had begun their relentless outcry against Colgan.  A prime example is a *Buffalo News*' editorial, entitled "Colgan Needs to Come Clean," which accused Colgan of lying and deliberate deceit in the first sentence.  *See* Harrington Decl. Ex. BB.  The *Buffalo News* also published articles relating to the Renslow transition email, entitled "Emails reveal bosses' doubts about Renslow" and "Colgan Deception Issue Extends to 2009 Probe," which accused Colgan of putting profit before passenger safety. *See* Harrington Decl. Exs. H and

Y.  Even NBC's nationally televised Today Show called the emails "troubling revelations." Harrington Decl. Ex. J.

These news stories immediately turned public opinion, and the jury pool, against Colgan. The *Buffalo News* published a letter to the Editor from a local resident regarding the Renslow transition email entitled, "It's Sad to See Profits Put Before Air Safety."  Letter to the Editor, *It's Sad to See Profits Put Before Air Safety*, BUFFALO NEWS, November 1, 2011 (attached as Ex. II to the Harrington Decl.).  The online comments posted by local residents on the *Buffalo News'* website regarding the articles were universally negative, with one calling Colgan "just shy of being a criminal enterprise" and another stating "[t]hese monsters are unconscionable."  *See* Harrington Decl. Ex. Y.  Moreover, Plaintiffs' Liaison Counsel further perpetuated these mischaracterizations of the Renslow transition email and Colgan's safety record, stating on Buffalo's local NBC affiliate that "this set of emails really is a smoking gun," and that the emails prove that "Colgan chose profit over safety."  Harrington Decl. Exs. H and AA.  He also accused Colgan's former Vice President of Flight Operations, Harry Mitchel, of providing "deliberately false information to the NTSB."  Harrington Decl. Ex. P.

Plaintiffs' recent press tour and subsequent request that Colgan de-dedesignate its entire document production make clear that their intention is to provide Colgan's discovery materials to the media.  Defendants foresaw Plaintiffs' motive during the parties' unsuccessful negotiations for the November 6, 2009 Order and specifically expressed their concerns that Plaintiffs would leak information to the press, turn this case into a trial by the media and taint the jury pool.  *See* Harrington Decl. Ex. C, Defendants' September 8, 2009 Responses at 3.  Plaintiffs never responded to this concern and with good reason: it has long been their intention to fan the flames

of the media firestorm that has surrounded this case from its inception and, in doing so, inhibit Defendants' ability to receive a fair trial in this Court.

The ability of the general public, including members of the potential jury pool, to access any more of Colgan's discovery materials would only further taint the jury that is ultimately seated in this case. Moreover, any additional discovery materials released to the public only would reinforce Plaintiffs' and the press' one-sided, inaccurate public portrayal of this litigation. While Colgan cannot prevent Plaintiffs' counsel from trying this case in the media or the media from reporting on it, the Court should certainly not force Colgan to supply Plaintiffs' attorneys and the media with ammunition for purposeful misrepresentation that will only further prejudice Defendants' ability to obtain a fair trial in Buffalo. The public's reaction to the single released Renslow transition email amply demonstrates good cause to keep the remainder of Colgan's discovery materials confidential.

**B.** **Plaintiffs Cannot Demonstrate a Legitimate Interest in Disclosing Colgan's Discovery Materials to the Public**

Plaintiffs likely will argue that Colgan's discovery materials should be made public because the public's need for information regarding Colgan's flight safety record outweighs the prejudice to Colgan's ability to obtain a fair trial. However, this argument ignores the fact that Plaintiffs will have the opportunity at trial to present the materials they seek to de-designate for the public record. This same argument was raised and rejected in the cases brought against the aviation industry defendants as a result of the September 11, 2001 terrorist attacks. *See In re September 11 Litigation*, 262 F.R.D. 274, 278-80 (S.D.N.Y. 2009) (rejecting plaintiffs' argument that releasing documents would inform the public about the alleged failures of aviation security, noting that "such a record will be established at a public trial" and finding that pretrial discovery "was not the proper means to achieve the exposure that Plaintiffs seek" and "any claim to a

historical and public interest that would not be served fully by a public trial is outweighed by the undue delay and harm. . .that would result from disclosure"). *See also Dorsett I*, 762 F. Supp. 2d at 523-24 (acknowledging the "important general interest" of informing the public about alleged misconduct at issue in the litigation, but nevertheless entering a protective order because the "community will obtain the facts and information regarding the events at issue here without public dissemination" of the document).[7]

Plaintiffs' interest in creating a public record would not be diminished by the Court issuing a Rule 26(c) protective order. Plaintiffs' de-designation request is clearly a deliberate attempt to embarrass Colgan and further poison the prospective jury pool such that Colgan cannot obtain a fair trial in this Court. Defendants have voiced their concerns that Plaintiffs would resort to such tactics since the inception of this litigation. Indeed, during the course of trying to negotiate the November 6, 2009 Order, Defendants specifically expressed that "Plaintiffs offer no plausible reason why they would need [discovery materials] to be made available to anyone other than the people that are specifically allowed to receive Confidential Information under the terms of the Protective Order." Harrington Decl. Ex. C at 3. Nor, can Plaintiffs offer one now. Plaintiffs' request that Colgan de-designate its entire document production is nothing but an attempted media smear campaign. Accordingly, good cause exists for the Court to issue a Rule 26(c) protective order prohibiting the disclosure, dissemination, release or revelation of Colgan's discovery materials in light of the "danger that judicial

---

[7] Moreover, the time and effort that Colgan and the Court would need to devote to review each confidentiality designation at this point in the litigation (Colgan alone has produced more than 400,000 pages of discovery materials) would distract and divert the attention of the Court and counsel from more important pretrial issues. Such diversion risks substantially slowing or even halting the progress of this litigation. *See In re September 11 Litigation*, 262 F.R.D. at 280 ("Reviewing each confidentiality designation would divert this litigation from its legitimate course toward a public trial of Plaintiffs' claims or other resolution.").

efficiency would be impaired by [their] premature release." *See Stern v. Crosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007).

### III. New York's Rules of Professional Conduct Support Colgan's Request for a Rule 26(c) Protective Order

Subsection (a) of New York's Rule of Professional Conduct § 3.6 provides that:

> A lawyer who is participating in or has participated in a criminal or civil matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

N.Y. Rules of Prof'l Conduct R. 3.6 (2011). Subsection (b) further elaborates that "[a] statement ordinarily is likely to prejudice materially an adjudicative proceeding when it refers to a civil matter triable to a jury…and that statement relates to: (1) the character, credibility, reputation or criminal record of a party." *Id.*

Comment 1 to Rule 3.6 recognizes that "[i]t is difficult to strike a balance between protecting the right to a fair trial and safeguarding the right of free expression." N.Y. Rules of Prof'l Conduct R. 3.6, Comment 1 (June 25, 2011). However, "[p]reserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved." *Id.* Colgan is mindful and appreciative of Plaintiffs' right of free expression. However, that right should not supersede Colgan's rights, most notably its right to a fair trial. While Plaintiffs will have the opportunity to introduce admissible evidence at trial to support their case, they should not be allowed to disseminate that confidential information beforehand. *See* Harrington Decl. Ex. HH, Russ November 1, 2011 letter ("I did provide copies of the 'smoking gun' email to the press").

Moreover, Plaintiffs' Liaison Counsel's actions arguably do not comport with this Court's expectation that all counsel act "ethically, professionally, and to the very best of your

respective abilities with your clients to not unfairly impact or prejudice anything that might make these cases work out in the best interest of the greater good." Harrington Decl. Ex. A, July 8, 2010 Hr'g Trans. at 16:15-16:20. Accordingly, the Court should issue a Rule 26(c) order protecting Colgan's discovery materials so that Plaintiffs' Liaison Counsel has no choice but to "abide by the Code of Professional Responsibility . . . which imposes a 'substantial likelihood of material prejudice' standard." *People v. Buttafuoco*, 599 N.Y.S.2d 419, 422-23 (Sup. Ct. Nassau County 1993).

## **CONCLUSION**

For the reasons stated above, the Court should grant Colgan's motion and issue a protective order pursuant to the November 6, 2009 Order and Federal Rule of Civil Procedure 26(c) prohibiting the disclosure, dissemination, release or revelation of, and permanently designating as "Confidential Information," all deposition transcripts, discovery documents and materials produced by Colgan.

Dated: New York, New York
      November 17, 2011

                             Respectfully submitted,

                             By: s/ David J. Harrington

                             David J. Harrington
                             CONDON & FORSYTH LLP
                             Times Square Tower
                             7 Times Square, 18th Floor
                             New York, NY  10036
                             Tel.:    (212) 894-6816
                             Fax:    (212) 370-4453
                             dharrington@condonlaw.com

                                  - and -

Neil A. Goldberg
GOLDBERG SEGALLA LLP
665 Main Street, Suite 400
Buffalo, NY  14203
Tel.:    (716) 566-5475
Fax:    (716) 566-5401
ngoldberg@goldbergsegalla.com

*Attorneys for Defendants Colgan Air, Inc.
and Pinnacle Airlines Corp.*

*Of Counsel*:

CONDON & FORSYTH LLP
Victoria A. Turchetti
Evan Kwarta
Marissa N. Lefland